IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WELLMAN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 07-585-SLR |
| | ) |
| EASTMAN CHEMICAL COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 3rd day of October, 2008, having reviewed plaintiff's motion for a preliminary injunction and the papers submitted in connection therewith; and having subject matter jurisdiction pursuant to 28 U.S.C. § 1338;

IT IS ORDERED that said motion (D.I. 12) is denied, for the reasons that follow:

1. **Standard of review.** The Patent Act provides that injunctions "may" issue "in accordance with the principles of equity." 35 U.S.C. § 283. The grant of a preliminary injunction is considered "extraordinary relief." *Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1335 (Fed. Cir. 2006). Nevertheless, "[t]he decision to grant or deny . . . injunctive relief is an act of equitable discretion by the district court." *eBay, Inc. v. MercExchange, L.L.C.*, — U.S. —, 126 S. Ct. 1837, 1839 (2006).

2. As the party moving for injunctive relief, plaintiff Wellman, Inc. ("Wellman") must

> establish its right to a preliminary injunction in light of four
> factors: (1) the movant has some likelihood of success on

> the merits of the underlying litigation; (2) immediate irreparable harm will result if the relief is not granted; (3) the balance of hardships to the parties weighs in the movant's favor; and (4) the public's interest is best served by granting the injunctive relief.

*Abbott Labs.*, 452 F.3d at 1334 (citation omitted).

    **a. Likelihood of success on the merits.** In order to carry its burden at this stage of the proceedings, Wellman must demonstrate that it will "likely prove" that defendant Eastman Chemical Company ("Eastman") infringes the patent-in-suit, and that its infringement claim "will likely withstand" Eastman's challenges to the validity and enforceability of the patent-in-suit. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). "If [Eastman] raises a substantial question concerning either infringement or validity, *i.e.*, asserts an infringement or invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." *Id.* at 1350-52 (citation omitted).

    **b. Irreparable harm.** If Wellman fails to demonstrate a likelihood of success on the merits, it must "clearly establish[ ] that monetary damages could not suffice." *Abbott Labs.*, 452 F.3d at 1348. Even if Wellman succeeds in demonstrating a likelihood of success on the merits, the notion that there follows a presumption of irreparable harm seems inconsistent with the Supreme Court's holding in *eBay, Inc. v. MercExchange, L.L.C.*, 126 S. Ct. at 1840-41, where the Court rejected such "general rule[s]" and "categorical" grants of relief. Therefore, it remains the moving party's burden to establish that monetary damages could not suffice.

    **c. The balance of hardships.** Both Wellman and Eastman must

2

"quantify the hardship, if any, [they] will face if an injunction" is not entered (or incorrectly entered). *Abbott Labs.*, 452 F.3d at 1348.

        d. **Public interest factor.** Absent any other relevant concerns, the public interest factor is generally bound to the likelihood of success on the merits, as it is in the public interest to enforce valid and infringed patents; conversely, the public interest is best served by denying a preliminary injunction when a moving party has failed to establish that the patents are likely valid and infringed.

        3. **Background facts.** Wellman manufactures high-quality polyethylene terephthalate ("PET") resin under the tradename PermaClear®. Wellman sells its PermaClear® resin to manufacturers of plastic beverage bottles and other food packaging throughout North and South America.

        4. Wellman is the owner of U.S. Patent No. 7,094,863 ("the '863 patent"),[1] entitled "Polyester Preforms Useful for Enhanced Heat-Set Bottles." (D.I. 15, ex. 2) According to the abstract, the invention of the '863 patent

> relates to slow-crystallizing [PET] resins that possess a significantly higher heating crystallization exotherm peak temperature ($T_{CH}$) as compared with those of conventional antimony-catalyzed [PET] resins. The [PET] preforms of the present invention, which possess improved reheating profiles, are especially useful for making polyester bottles that have exceptional clarity and that retain acceptable dimensional stability upon being hot-filled with product at temperatures between about 195° F. and 205° F.

        5. Eastman is the largest manufacturer of PET resins in the United States for food and beverage packaging. In November 2006, Eastman launched its newest PET

---

[1] Wellman also owns U.S. Patent No. 7,129,317 ("the '317 patent") which, although asserted, is not at issue in this proceeding. (D.I. 101 at 4)

product called ParaStar® PET resin. Eastman's ParaStar® 4000 and ParaStar® 7000 products are accused of infringing (for purposes of this proceeding) claim 15 of the '863 patent.[2]

6. Wellman filed for bankruptcy protection in February 2008. According to Wellman, because its patented resins and Eastman's accused resins compete head-to-head in the water bottle and carbonated soft drink markets, among the events necessitating the commencement of a chapter 11 case was "Eastman's infringement of Wellman's patented technology." (D.I. 101 at 18) Eastman asserts, however, that the PET resins covered by the '863 patent constitute only about 2.6% of Wellman's total PET resin sales; in fact, the Nestle contract that was lost to Eastman was a contract to supply antimony-catalyzed PET resins which are not within the scope of the '863

---

[2]Claim 15 of the '863 patent discloses:

> 15. A [PET] preform having an improved reheating profile, comprising:
> [PET] polymers including less than about 6 mole percent comonomer substitution;
> less than about 25 ppm of elemental antimony, if any;
> more than about 5 ppm of elemental phosphorus; and
> a heat-up rate additive that is present in an amount sufficient to improve the preform's reheating profile;
> wherein the [PET] preform has an intrinsic viscosity between about 0.68 and 0.86 dl/g;
> **wherein the [PET] preform has a heating crystallization exotherm peak temperature ($T_{CH}$) of more than about 140° C. at a heating rate of 10° C. per minute as measured by differential scanning calorimetry;**
> wherein the [PET] preform has an absorbance (A) of at least about 0.25 cm$^{-1}$ at a wavelength of 1100nm or at a wavelength of 1280 nm; and
> **wherein the [PET] preform has an L* value of more than about 75 as classified in the CIE L*a*b* color space.**

The emphasized language identifies the two limitations at issue.

4

patent. (D.I. 83 at 36)

**7. Analysis.** Wellman has introduced evidence demonstrating that the accused Eastman resins infringe claim 15 of the '863 patent.[3] (*See, e.g.,* D.I. 103, 105) Eastman has introduced contrary evidence with respect to the limitations disclosing $T_{CH}$ and L* values. (*See, e.g.,* D.I. 84 at A0072-0082, A0224-0322) The court finds, based on the record presented, that Eastman has not raised a substantial question concerning infringement by its ParaStar® 4000 resin,[4] as its test results for $T_{CH}$ values are not as credible as those obtained by Wellman. (*See, e.g.,* D.I. 103 at 8-17; D.I. 105 at 7-12, 20-32)

8. With respect to the issue of invalidity, Eastman argues that the '863 patent is "likely invalid" for indefiniteness, lack of enablement, failure to disclose best mode, and as anticipated or for obviousness.

    a. Eastman contends that the '863 patent is indefinite because it does not disclose specific testing protocols for measuring $T_{CH}$, L* and A (absorbance) values. Because patents do not need to disclose "conventional" testing procedures to maintain definiteness, *see PPG Indus. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1563 (Fed. Cir. 1996), and because the '863 patent provides substantial guidance to measure the

---

[3]The parties did not bring to the court's attention any disputed claim language requiring construction; therefore, the court has not undertaken a claim construction analysis for purposes of these proceedings.

[4]The court finds that Eastman has raised a substantial question concerning infringement of the L* value limitation of claim 15 by the ParaStar® 7000 resin. (*See* D.I. 84 at A0079, where Dr. Quillen avers that she has "reviewed the L* data from all the ParaStar 7000 crystallized pellets manufactured since the filing of the lawsuit and can confirm that the L* values of this resin are below 70;" *see also* D.I. 103 at 23, where the L* (pellet) data for ParaStar® 7000 is below 70).

claimed values for the above limitations,[5] the court finds that Eastman has not raised a substantial question of invalidity as to indefiniteness. Because the issues of indefiniteness, lack of enablement and failure to disclose best mode, to a great extent, collapse into each other in this case, the court's finding as to indefiniteness is extended to include enablement and best mode.

      b. The court agrees that the four prior art references identified by Eastman do not anticipate (expressly or by inherency) claim 15 of the '863 patent. (*Compare* D.I. 83 at 25-26, 28-29, 32-33 *with* D.I. 101 at 14-15) However, given the similarity of the technical parameters as between claim 15 and the prior art references cited, the court finds that Eastman has raised a substantial question as to whether claim 15 is obvious and, therefore, invalid under 35 U.S.C. § 103.

      10. Given the above findings, the court concludes that Wellman has not demonstrated that it will "likely prove" that ParaStar® 7000 infringes claim 15 of the '863 patent, or that claim 15 will "likely withstand" Eastman's challenges to the validity of the '863 patent. Therefore, Wellman has failed to carry its burden of proving likelihood of success on the merits.

      11. Even it Wellman had demonstrated a likelihood of success on the merits, the court finds that Wellman has not established irreparable harm. Although there is no dispute that Wellman and Eastman are competitors and that Wellman is suffering financially, nevertheless, Wellman did not specifically dispute the representations that the patented resins account for only a small percentage of its total business. Nor has

---

[5](*See, e.g.,* col. 8, ll. 4-11, figures 1-8 regarding $T_{CH}$ values; col. 11, ll. 10-25 regarding L* values; col. 18, ll. 1-4 regarding A values)

Wellman demonstrated that the loss of business to Eastman is directly related to sales of the patented technology (assuming that the accused resins are covered by the '863 patent). (See D.I. 101 at 18-19) Under these circumstances, the court concludes that Wellman has failed to clearly establish that monetary damages could not suffice to address any injuries ultimately found to be attributable to infringement by Eastman of the '863 patent.

12. Having failed to establish a likelihood of success on the merits and irreparable harm, Wellman cannot prevail on its motion for injunctive relief.

_____
United States District Judge